1   HOLLAND & KNIGHT LLP
    Matthew P. Vafidis (California Bar No. 103578)
2   Andrew T. Caulfield (California Bar No. 238300)
3   50 California Street, 28th Floor
    San Francisco, California 94111
4   Telephone: (415) 743-6900
    Facsimile: (415) 743-6910
5   matthew.vafidis@hklaw.com
6   andrew.caulfield@hklaw.com

7   Joshua C. Krumholz
    Elizabeth R. Burkhard
8   HOLLAND & KNIGHT LLP
9   10 St. James Avenue, 11th Floor
    Boston, MA  02116
10  Telephone:  (617) 523-2700
11  joshua.krumholz@hklaw.com
    elizabeth.burkhard@hklaw.com
12  Pro Hac Vice applications pending

13
    Attorneys for Plaintiff
14  CHEVRON TCI, INC.

ORIGINAL FILED

FEB - 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

15

16            UNITED STATES DISTRICT COURT

17          NORTHERN DISTRICT OF CALIFORNIA

18              SAN FRANCISCO DIVISION

19

JCS

20   CHEVRON TCI, INC.,

21                Plaintiff,                CV 08     0782

22        vs.

23   CARBONE PROPERTIES MANAGER,       COMPLAINT FOR BREACH OF
     LLC, a limited liability company; ROSS P.   CONTRACT AND PROMISSORY NOTE
24   CARBONE, an individual; and R. P.
     CARBONE COMPANY, a corporation,
25

26                Defendants.

27

28

---

COMPLAINT                                              No.:

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: (415) 743-6900

1    As and for its Complaint herein, Plaintiff CHEVRON TCI, INC. (hereinafter

2    "CHEVRON" or "Plaintiff") alleges against Defendants CARBONE PROPERTIES

3    MANAGER, LLC, a limited liability company (hereinafter "CPM"), ROSS P. CARBONE, an

4    individual (hereinafter, "ROSS CARBONE"), and R. P. CARBONE COMPANY, a

5    corporation (hereinafter "RPC"), as follows:

6    **PARTIES**

7    1.    Plaintiff CHEVRON is a California corporation with its principal place of

8    business at 345 California Street, 30th Floor, San Francisco, California 94104.

9    2.    Defendant CPM is a Louisiana limited liability company with its principal

10    place of business at 5885 Landerbrook Drive, Suite 110, Cleveland, OH 44124.  Upon

11    information and belief, all the members of CPM are individuals that reside in the state of

12    Ohio.

13    3.    Defendant ROSS CARBONE is an individual whose principal residence is 630

14    Gloucester Drive, Highland Heights, OH 44143.  ROSS CARBONE is a principal and officer

15    of CPM.

16    4.    Defendant RPC is an Ohio corporation with its principal place of business at

17    5885 Landerbrook Drive, Suite 110, Cleveland, OH 44124.

18    **JURISDICTION**

19    5.    This Court has federal subject matter jurisdiction over this action pursuant to

20    28 U.S.C., section 1332 since the matter in controversy exceeds the sum or value of $75,000,

21    exclusive of interest and costs, and is between citizens of different States.

22    6.    This Court has personal jurisdiction over each defendant in this action, at least

23    because each party has consented to said jurisdiction pursuant to a Promissory Note between

24    the parties dated April 2007 (the "Promissory Note").  A true and correct copy of the

25    Promissory Note is attached to this Complaint as Exhibit A.

26    7.    Venue is proper in this district because CHEVRON has its principal place of

27    business in this district.  Further, the Promissory Note provides for venue in San Francisco,

28    California.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

– 2 –

COMPLAINT                                                                      No.:

1     **INTRADISTRICT ASSIGNMENT (Local Rule 3-5(b)**

2       8.     The Promissory Note provides that venue for any action arising thereunder

3   shall be in a court having jurisdiction and venue in San Francisco, California.

4     **FACTS COMMON TO ALL CAUSES OF ACTION**

5     **Background**

6       9.     On or about December 30, 2004, CHEVRON and CPM entered into the

7   Operating Agreement of Carbone Properties Operating Company, LLC (the "Company")

8   dated December 30, 2004 (the "Operating Agreement").

9       10.     The Company was formed to lease an historic building known as the Audubon

10   Building in New Orleans, Louisiana and to operate the building as a hotel after rehabilitation

11   by the building owner, Carbone Properties of Audubon, LLC ("CPA"). CPA is and was

12   under the common control of ROSS CARBONE and the defendants.

13       11.     Pursuant to the Operating Agreement, CHEVRON was the Investor Member of

14   the Company and CPM was its Managing Member.

15       12.     By separate agreement, ROSS CARBONE and RPC guaranteed certain of

16   CPM's obligations under the Operating Agreement.

17       13.     A key aspect of the investment to CHEVRON was the availability of historic

18   rehabilitation tax credits that would be earned through the rehabilitation and preservation of

19   the building. The credits would be earned by CPA, would pass through to the Company, and

20   ultimately would pass through to CHEVRON pursuant to certain agreed upon terms.

21       14.     Based upon the availability of tax credits and other inducements, Chevron

22   invested $1,961,349 as Capital Contributions into the Company.

23       15.     Pursuant to Section 7.4(N) of the Operating Agreement, CHEVRON had the

24   right to have its interest in the Company repurchased by CPM if the project was not

25   completed by November 30, 2006.

26       16.     The project was not completed by November 30, 2006.

27       17.     On January 5, 2007, CHEVRON notified ROSS CARBONE and CPM in

28   writing, pursuant to Section 7.4(N) of the Operating Agreement, of CHEVRON's election of

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

– 3 –

COMPLAINT                               No.:

1    its right to have its interest in the Company repurchased by CPM, with an effective repurchase

2    date of February 5, 2007 and a repurchase amount of $2,311,470.

3        18.    CPM did not make payment to CHEVRON by February 5, 2007.

4        19.    On February 14, 2007 and then again on April 4, 2007, CHEVRON notified

5    the defendants that they had failed to comply with their repurchase obligations.

6    **The Agreement and Instrument of Transfer and Promissory Note**

7        20.    Following CPM's failure to pay CHEVRON by February 5, 2007, CHEVRON

8    and CPM negotiated terms for CPM's repurchase of CHEVRON's interest in the Company.

9        21.    On April 30, 2007, CHEVRON, CPM and the Company entered into the

10   Agreement and Instrument of Transfer (the "Agreement").  A true and correct copy of the

11   Agreement is attached to this Complaint as Exhibit B.

12       22.    Pursuant to the Agreement, CPM agreed to pay CHEVRON $2,367,710 plus

13   compound interest at twelve percent until June 26, 2007 and, if not paid by that date, fifteen

14   percent thereafter (the "Obligation").

15       23.    The Obligation also was evidenced by the Promissory Note, with CPM as the

16   payor and CHEVRON as the payee.

17       24.    RPC and ROSS CARBONE guaranteed CPM's obligations under the

18   Agreement and the Promissory Note, including the Obligation.

19       25.    In exchange for those promises to pay, CHEVRON transferred its rights and

20   interest in the Company to CPM.

21       26.    Pursuant to the Agreement and the Promissory Note, the Obligation came due

22   and owing on June 26, 2007.  No payment was made at that time.

23       27.    On July 2, 2007, CPM paid CHEVRON $200,000 toward satisfaction of the

24   Obligation, leaving the majority of the amount owed unsatisfied.

25                    **FIRST CAUSE OF ACTION**
26                      **(PROMISSORY NOTE)**

27       28.    CHEVRON realleges each and every allegation of paragraphs 1 through 27

28   herein as if set forth in their entirety.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

– 4 –

COMPLAINT                                                      No.:

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

29.    CHEVRON has performed all obligations to be performed under the Promissory Note.

30.    CPM breached the Promissory Note by, among other things, failing to pay CHEVRON the principal and interest due under the Promissory Note, either upon maturity or at any time thereafter.

31.    The Promissory Note provides for the payment of compound interest at the rate of twelve percent up to the maturity date of June 26, 2007, and at the rate of fifteen percent following the maturity date, and further provides for the payment of attorneys' fees and other costs incurred by CHEVRON in collecting on the note, or in otherwise protecting its interests in regard thereto.

32.    Pursuant to the Promissory Note, "[i]f any payment hereunder shall become overdue ... for a period in excess of five (5) days, [CHEVRON] may at its option charge [CPM] a 'late charge' in the amount of five percent (5%) of such overdue payment, for the purpose of defraying the expense incident to handling such delinquent payment."

33.    Payment on the Promissory Note has been overdue in excess of five days.

34.    As a direct and proximate result of CPM's breach of its obligations under the Promissory Note, CHEVRON has been damaged in the amount of the principal, interest and charges owed under the Promissory Note, costs for enforcement of the Note, attorneys' fees, and incidental and consequential damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT)

35.    CHEVRON realleges each and every allegation of paragraphs 1 through 34 herein as if set forth in their entirety.

36.    CHEVRON has performed all obligations to be performed under the Agreement.

37.    CPM breached the Agreement by, among other things, failing to pay CHEVRON the principal and interest due under the Agreement, either upon maturity or at any time thereafter.

– 5 –

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

38.    The Agreement provides for the payment of interest at the rate of twelve percent up to the maturity date of June 26, 2007, and at the rate of fifteen percent following the maturity date, and further provides for the payment of attorneys' fees and other costs incurred by CHEVRON in enforcing the Agreement, or in otherwise protecting its interests in regard thereto.

39.    As a direct and proximate result of CPM's breach of its obligations under the Agreement, CHEVRON has been damaged in the amount of the principal, interest and charges owed under the Agreement, costs for enforcement of the Agreement, attorneys' fees, and incidental and consequential damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### (ACTION ON GUARANTY)

40.    CHEVRON realleges each and every allegation of paragraphs 1 through 39 herein as if set forth in their entirety.

41.    Pursuant to the Agreement, ROSS CARBONE and RPC are guarantors of the Obligation owed by CPM to CHEVRON under the Agreement and the Promissory Note.

42.    CPM, ROSS CARBONE and RPC have failed to pay the full amount owed under the Agreement and the Promissory Note.

43.    ROSS CARBONE and RPC are in breach of their guarantees as set forth in the Agreement.

44.    CHEVRON is entitled to the amount owed by CPM on the Agreement and the Promissory Note, plus its costs for collection and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff CHEVRON TCI, INC. prays that it be awarded the following relief against Defendants CARBONE PROPERTIES MANAGER, LLC, ROSS P. CARBONE and R. P. CARBONE COMPANY:

1.    For compensatory damages in an amount to be determined at trial, but not less than the principal, interest and charges owed under the Promissory Note and Agreement;

2.    For incidental and consequential damages in an amount to be proven at trial;

– 6 –

COMPLAINT                                                              No.:

3.     For costs of enforcement and suit;

4.     For attorneys' fees pursuant to the Agreement, Promissory Note, and/or statute; and

5.     For such other relief as the court deems just and appropriate.

Dated: February 1, 2008

               HOLLAND & KNIGHT LLP

               Matthew P. Vafidis
               Andrew T. Caulfield
               Attorneys for Plaintiff
               CHEVRON TCI, INC.

# 5098285_v1

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

– 7 –

COMPLAINT                              No.:

Exhibit A

## PROMISSORY NOTE

### (CARBONE PROPERTIES OPERATING COMPANY INTEREST)

$2,367,710.00

_____, _____

April __, 2007

FOR VALUE RECEIVED, Carbone Properties Manager, a Louisiana limited liability company having a business address at c/o Carbone Properties of Audubon LLC, 5885 Landerbrook Drive, Suite 110, Cleveland, OH 44124-4031 (hereinafter referred to as "Maker"), promises to pay to the order of Chevron TCI, Inc., a California corporation having its principal place of business at 345 California Street, 30th Floor, San Francisco, CA 94104 (hereinafter referred to as "Payee" or "Chevron"), or order, the principal sum of Two Million Three Hundred Sixty-Seven Thousand Seven Hundred and Ten and 00/100 Dollars ($2,367,710) payable at the times hereinafter specified, together with interest, from the date hereof on the unpaid principal balance from time to time outstanding under this Promissory Note (this "Note"), at the rates set forth below.

Maker promises to pay to the order of Payee interest, compounded annually, on the principal amount of this Note outstanding from time to time and on all unpaid installments of interest and other sums due under this Note, from April 20, 2007 until payment in full of all such sums due under this Note, at a rate equal to twelve percent (12%) per annum from April 20, 2007 until June 26, 2007 (which equals a daily payment of Seven Hundred and Sixty Dollars ($760)), increasing to fifteen percent (15%) per annum on any amounts outstanding as of June 26, 2007. All interest accruing under this Note shall be paid on the Maturity Date (as hereinafter defined).

All computations of interest under this Note shall be made on the basis of a three hundred sixty-five (365) day year and the actual number of days elapsed.

Maker and Payee acknowledge that Maker and other affiliates of Maker (collectively, "Carbone") own the Audubon Building in New Orleans, Louisiana (the "Building"). Payee invested in Carbone Properties Operating Company, LLC, a Louisiana limited liability company (the "Company"), which was formed to lease the Building from its owner and operate a hotel therein. As a condition to Chevron's investment in the Company, Carbone agreed to repurchase Chevron's interest if the rehabilitation of the Building was not completed by November 30, 2006. The rehabilitation was not completed by that date, and the Maker has purchased Chevron's interest and issued this Note in payment therefor pursuant to an Agreement and Instrument of Transfer by and among Maker and Payee and others dated as of April __, 2007 (the "Agreement and Instrument of Transfer").

The unpaid principal balance hereunder, together with all unpaid interest, fees, expenses and other charges, if not sooner paid, shall be due and payable, on June 26, 2007 (the "Maturity Date").

Whenever any of the days on which payments of interest or principal required to be made hereunder fall on a Sunday or a public holiday, such payment shall be due on the next following

# 4487946_v2

normal business day, and where time is extended for the payment of principal by virtue of the due date thereof falling on a Sunday or public holiday, such extended time shall be included in the computation of interest.

All sums payable hereunder are payable in lawful money of the United States of America and in immediately available funds at the above stated office of Payee or such other place or places as Payee, its successors or assigns, if any (the "Holder") may designate in writing.

This Note may be prepaid in whole or in part at any time without premium or penalty.

If any payment hereunder shall become overdue (taking into account any extension granted by Maker hereunder) for a period in excess of five (5) days, Payee may at its option charge Maker a "late charge" in the amount of five percent (5%) of such overdue payment, for the purpose of defraying the expense incident to handling such delinquent payment.

All sums paid under this Note including, but not limited to, any partial prepayment shall be applied first to any interest, fees, expenses and other charges then due and unpaid, and then to principal.

Notwithstanding anything contained herein to the contrary, in no event shall the interest charged, reserved and/or taken on the loan evidenced hereby exceed the maximum allowed by and determined in accordance with applicable law.

Maker represents and warrants to Payee as follows:

1.    Organization, Powers.  Maker (i) is a limited liability company duly organized, validly existing and in good standing under the laws of the state of its organization, and is authorized to do business in each other jurisdiction wherein the failure to qualify would have a material adverse effect on Maker; (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note.

2.    Execution of Note.  This Note has been duly executed and delivered by Maker. Execution, delivery and performance of this Note will not: (i) violate any of Maker's organizational documents, provision of law, order of any court, agency or other instrumentality of government, or any provision of any indenture, agreement or other instrument to which it is a party or by which it or any of its properties is bound; (ii) result in the creation or imposition of any lien, charge or encumbrance of any nature, other than the liens; and (iii) require any authorization, consent, approval, license, exemption of, or filing or registration with, any court or governmental authority.

3.    Obligations of Maker.  This Note is the legal, valid and binding obligation of Maker, enforceable against it in accordance with its terms, except as the same may be limited by bankruptcy, insolvency, reorganization or other laws or equitable principles relating to or affecting the enforcement of creditors' rights generally.  Maker is obtaining the loan evidenced by this Note for commercial purposes.

# 4487946_v2

11

4.    <u>Litigation</u>.   There is no action, suit or proceeding at law or in equity or by or before any governmental authority, agency or other instrumentality now pending or, to the knowledge of Maker, threatened against or affecting Maker or any of its properties or rights which, if adversely determined, would materially impair or affect:  (i) the value of any collateral securing this Note; (ii) Maker's right to carry on its business substantially as now conducted (and as now contemplated); (iii) its financial condition; or (iv) its capacity to consummate and perform its obligations under this Note.

5.    <u>No Defaults</u>.   Maker is not in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained herein or in any material agreement or instrument to which it is a party or by which it or any of its properties is bound. Execution of this Note by Maker will not create any default or event of default under any document, instrument or agreement to which Maker is bound.

6.    <u>No Untrue Statements</u>.   None of this Note or any other document, certificate or statement furnished to Payee by or on behalf of Maker contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading.  Maker acknowledges that all such statements, representations and warranties shall be deemed to have been relied upon by Payee as an inducement to make the loan evidenced by this Note to Maker.

Maker covenants with Payee as follows:

1.    <u>Financial Statements; Compliance Certificate.</u>   Maker shall furnish to Payee the following financial information, in each instance prepared in accordance with generally accepted accounting principles consistently applied:

(a)    Not later than one hundred and eighty (180) days after the end of each fiscal year, annual audited financial statements of Maker including, without limitation, statements of financial condition, income and cash flows, a reconciliation of net worth, a listing of all contingent liabilities, notes to financial statements and any other information reasonably requested by Payee;

(b)    Not later than fifteen (15) days after filing with the Internal Revenue Service, a true and complete copy of the federal tax returns, including all schedules, of Maker; and

(c)    Such other information respecting the operations of Maker and/or the Building as Payee may from time to time reasonably request.  Maker shall furnish to Payee, with each set of financial statements described herein, a compliance certificate signed by Maker's chief financial officer certifying that: (i) all representations and warranties of Maker set forth in this Note or any other document executed in connection therewith remain true and correct as of the date of such compliance certificate; (ii) none of the covenants of Maker contained in this Note or any other loan document has been breached; and (iii) to its knowledge, no event has occurred which constitutes an Event of Default (or which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) under

this Note or any other loan document. In addition, Maker shall notify Payee of the occurrence of any pending or threatened litigation against Maker, any Other Liable Party or the Building or material adverse change in the financial condition of Maker, any Other Liable Party or the Project within a reasonable period of time after obtaining knowledge thereof.

2.    <u>Indemnification</u>. Maker hereby indemnifies and agrees to defend and hold harmless Payee, its officers, employees and agents, from and against any and all losses, damages, or liabilities and from any suits, claims or demands, including reasonable attorneys' fees incurred in investigating or defending such claim, suffered by any of them and caused by or arising out of, this Note or the transactions contemplated herein or Payee's investment in the Company (except to the extent determined by a final judgment of a court of competent jurisdiction to have been caused by the gross negligence or willful misconduct of any of the indemnified parties).

In case any action shall be brought against Payee, its officers, employees or agents, in respect to which indemnity may be sought against Maker, Payee or such other party shall promptly notify Maker and Maker shall assume the defense thereof, including the employment of counsel selected by Maker and satisfactory to Payee, the payment of all reasonable costs and expenses and the right to negotiate and consent to settlement. Payee shall have the right, at its sole option, to employ separate counsel in any such action and to participate in the defense thereof, at Maker's sole reasonable cost and expense. Maker shall not be liable for any settlement of any such action effected without its consent (unless Maker fails to defend such claim), but if settled with Maker's consent, or if there be a final judgment for the claimant in any such action, Maker agrees to indemnify and hold harmless Payee from and against any loss or liability by reason of such settlement or judgment. These indemnity provisions shall survive the repayment or other satisfaction of Maker's liabilities and obligations to Payee.

The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Note:

(1)    nonpayment of any sum due under this Note within five (5) days of when it shall become due and payable; or

(2)    nonperformance or nonobservance of any of the covenants, agreements and conditions of this Note; or

(3)    breach of, or the proving false or misleading in any material respect of any representation or warranty now or hereafter made to Payee by, on behalf of, or for the benefit of Maker or any person, corporation or entity now or hereafter liable, absolutely or contingently, for the whole or any part of this Note ("<u>Other Liable Party</u>"), or contained in this Note, the Guaranty Agreement (as defined in the Agreement and Instrument of Transfer) or any financial statement furnished, signed or executed in connection herewith by, on behalf of, or for the benefit of Maker; or

(4) (a) the insolvency or inability of Maker or any Other Liable Party to pay his or its debts as they mature, or the appointment of a receiver, trustee, custodian or other fiduciary, for, or for any of the property of, or as assignment for the benefit of creditors by, or the making of

any deed in lieu of foreclosure or other instrument of similar import for the benefit of creditors by Maker or any Other Liable Party; or the convening of a meeting of the creditors, or the selection of a committee representing the creditors of Maker or any Other Liable Party; or (b) the filing of a petition, complaint, motion or other pleading seeking any relief under any receivership, insolvency, or debtor relief law, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the filing of a petition, complaint, or motion under any chapter of the Federal Bankruptcy Code, as the same now exists or may hereafter be amended (the "Code"), by or against Maker or any Other Liable Party which if filed against Maker or any Other Liable Party is not stayed within thirty (30) days after it is filed; or (c) the entry of any order for relief under any chapter of the Code, against Maker or any Other Liable Party; or

(5)     the failure (beyond any applicable grace or cure period) of Maker to pay, perform or observe any covenant or condition contained in (or the occurrence of any default or event of default under), or to be observed or performed pursuant to the terms of, any document, instrument or agreement to which Maker is a party or by which Maker is bound, provided such failure or default is likely to have a material adverse effect on Maker, its assets or Payee.

Upon the occurrence of any Event of Default, this Note, at the option of the Holder, shall become immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Maker. The Holder's failure to exercise such option shall not constitute a waiver of the right to exercise it at any other time.

Maker agrees to notify Payee promptly in writing, and in any event within twenty (20) days, of any material adverse change in the financial condition or net worth of Maker or any Other Liable Party, and of the occurrence of any event or condition which constitutes an Event of Default hereunder, or which with the giving of notice or passage of time, or both, would constitute such an Event of Default, together with a written statement to Payee which shall set forth the details of any action the undersigned propose(s) to take with respect thereto. Failure to so notify Payee shall be an Event of Default hereunder.

No renewal or extension granted, or any indulgence shown to, or any release of, or any dealings between the Holder and Maker or any other person, corporation, or entity now or hereafter interested in this Note, whether as owner, encumbrancer, grantor, or otherwise, shall discharge, extend or in any way affect the obligations of Maker hereunder.

Maker shall remain primarily liable on this Note until full payment, unaffected by any agreement or transaction between any Holder and any other person or entity as to payment of principal, interest or other monies, by any forbearance or extension of time, guaranty or assumption by others, or by any other matter, as to all of which notice is hereby waived by Maker.

Maker will pay the legal and other fees and expenses of the Holder, reasonably incurred in connection with or incidental to the enforcement of any of the obligations of Maker or rights of the Holder under this Note or any other agreement, document or instrument now or hereafter executed in connection herewith, by litigation or otherwise; and all such fees and expenses shall be indebtedness under this Note.

This Note may not be modified or terminated orally.

All agreements between Maker and Payee are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to Payee for the use or the forbearance of the indebtedness evidenced hereby exceed the maximum permissible under applicable law. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof; provided, however that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. In this regard, it is expressly agreed that it is the intent of Maker and Payee in the execution, delivery and acceptance of this Note to contract in strict compliance with the laws of the State of California and from time to time in effect. If, under or from any circumstances whatsoever, fulfillment of any provision hereof at the time of performance of such provision shall be due, shall involve transcending the limit of such validity prescribed by applicable law, then the obligation to be fulfilled shall automatically be reduced to the limits of such validity, and if under or from any circumstances whatsoever Payee should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. This provision shall control every other provision of all agreements between Maker and Payee.

MAKER AND PAYEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR PAYEE TO ACCEPT THIS NOTE AND MAKE THE LOAN EVIDENCED HEREBY.

Upon receipt of an affidavit of an officer of Payee as to the loss, theft, destruction or mutilation of the Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon surrender and cancellation of such Note, Maker will issue, in lieu thereof, a replacement Note in the same principal amount thereof and otherwise of like tenor.

This Note is delivered in and for all purposes shall be enforced and construed in accordance with the substantive law of the State of California, without resort to that state's conflict of laws rules. ANY LITIGATION IN CONNECTION WITH OR RELATING TO THIS NOTE OR THE ENFORCEMENT OF THIS NOTE OR ANY PAYMENT HEREOF SHALL BE BROUGHT ONLY IN A COURT HAVING JURISDICTION AND VENUE AT SAN FRANCISCO, CALIFORNIA, AND MAKER CONSENTS TO AND CONFERS PERSONAL JURISDICTION ON ANY SUCH COURT OR COURTS. The term "Payee" shall include Payee's successors, endorsees and assigns.

[signatures appear on next page]

# 4487946_v2

16

WITNESS our hands and seal as of the date first written above.

CARBONE PROPERTIES MANAGER, LLC

By: _Luce P. Carbone_

Its: _Managing Member_

Exhibit B

# Holland+Knight

Tel  617 523 2700
Fax 617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
www.hklaw.com

Pamela A. Duckworth
970 870 2924
pduckworth@hklaw.com

May 23, 2007

*VIA PRIORITY MAIL*
Mr. Richard Sheehy
Chevron TCI, Inc.
345 California Street, 30th Floor
San Francisco, CA 94104

Mr. Ross P. Carbone
c/o Carbone Properties of Audubon, LLC
5885 Landerbrook Drive, Suite 110
Cleveland, OH 44124-4031

　　　　Re:　　Audubon Building

Dear Dick and Ross:

　　　　Enclosed for each of you is a fully executed copy of the Agreement and Instrument of Transfer relating to Chevron's sale of its interest in Carbone Properties Operating Company, LLC to Carbone Properties Manager, LLC. Also enclosed in Dick's package is the original promissory note relating to payment of the purchase price.

　　　　I remind Ross that the payment is due by June 26, 2007. Upon receipt of full payment, Chevron should mark the note "Paid in Full" and return it to Ross.

　　　　Please contact me if you have any questions. Thank you.

　　　　　　　　Sincerely,

　　　　　　　　Pamela A. Duckworth

cc:　　　Steve Dwyer

# 4516636_v1

## AGREEMENT AND INSTRUMENT OF TRANSFER

(Member Interest in Carbone Properties Operating Company, LLC)

This AGREEMENT AND INSTRUMENT OF TRANSFER ("Agreement"), as of April __, 2007, is made by and between CHEVRON TCI, INC., a California corporation (the "Transferor"), and CARBONE PROPERTIES MANAGER, LLC, a Louisiana limited liability company (the "Transferee" or the "Managing Member"), and, for purposes of paragraphs 5, 9, 10, 11, 12 hereof and to consent to the transfer of the Interest transferred herein, joined by CARBONE PROPERTIES OPERATING COMPANY, LLC, a Louisiana limited liability company (the "Company"), and the Managing Member, and for purposes of paragraph 10 of this Agreement, joined by R.P. CARBONE COMPANY, an Ohio corporation, and ROSS P. CARBONE (the "Guarantors").

### RECITALS

The Transferor owns a 99.9% Percentage Interest in the Company. The Company is governed by that certain Operating Agreement dated as of December 30, 2004 (the "Operating Agreement"). The Transferor is desirous of assigning all of the Transferor's right, title and interest (the "Interest") in the Company to the Transferee as a result of the failure of the property to be operated by the Company to be completed by November 30, 2006. The Transferee has agreed to purchase the Interest on the terms set forth herein.

Capitalized terms not defined herein shall have the meaning set forth for such capitalized terms in the Operating Agreement or as defined therein by reference to other instruments.

NOW THEREFORE, in consideration of the mutual promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1.     Closing. Upon receipt of the Note (defined below) and a fully executed copy of this Agreement (the "Closing") and subject to the terms and conditions herein, the Transferor hereby CONVEYS, TRANSFERS and ASSIGNS, absolutely and unconditionally, to the Transferee, the Interest in the Company, such transfer to be effective as of the date the Closing occurs (the "Effective Date").

2.     Purchase Price.

(a)     The purchase price for the Interest (the "Purchase Price") shall be Two Million Three Hundred Sixty-Seven Thousand Seven Hundred and Ten Dollars ($2,367,710) plus interest at the rate of twelve percent (12%) per annum, compounded annually and based on a 365-day year, from April 20, 2007 until the date of payment, provided payment is made on or before June 26, 2007. The daily rate for interest accruing after April 20, 2007 at an annual 12% interest rate is Seven Hundred and Sixty Dollars ($760).

(b)    The total payment (the "Payment") to be received by Transferor shall be $2,367,710 plus any interest due pursuant to paragraph 2(a) or this paragraph 2(b). The Payment will be evidenced by a promissory note in the form attached to this Agreement as Exhibit A (the "Note"). If the entire balance of the Note has not been paid by June 26, 2007, then the interest rate shall change from 12% per annum to fifteen percent (15%) per annum effective June 26, 2007 through the date payment is made, and the Payment shall be recalculated and shall be due immediately.

(c)    The Payment shall be made by wire transfer of funds to:

ACCOUNT NAME:        Chevron U.S.A. Incorporated
F/B/O:               Chevron TCI, Inc. (Company #517)
ACCOUNT NUMBER:      51-28617
ABA NUMBER:          071000013
BANK NAME:           JP Morgan
                     525 West Monroe, 6th Floor
                     Chicago, IL 60661

(d)    The Transferee agrees to pay all costs incurred by the Transferor, including reasonable attorneys' fees, in enforcing its rights hereunder.

3.    Title to Interest. The Transferor hereby represents and warrants to the Transferee that it is the legal and beneficial owner of, and has good and merchantable title to the Interest transferred pursuant hereto, that it has full legal power, capacity, authority and unrestricted right to transfer said interest, subject only to the provisions of the Operating Agreement, and said Interest is transferred free and clear of all liens, pledges, encumbrances, subparticipations and claims of any kind or nature whatsoever. Following the Effective Date, the Transferor shall have no continuing interest or claim, security or otherwise, in and to the Interest.

4.    Transfer Taxes. The Parties intend that the transactions under this Agreement not be subject to realty transfer tax of the State of Louisiana. To the extent that state and local transfer taxes are imposed in connection with the transactions under this Agreement for any reason, the cost of such taxes shall be borne solely by Transferee. The Transferee shall pay the expense of the UCC and lien searches, title searches, title premiums and any other title insurance costs relating to the title commitment title policy, if desired by the Transferee. This Section 4 shall survive the Closing.

5.    Tax Matters.

(a)    The Transferor, the Transferee and the Managing Member acknowledge and agree that the purchase hereunder shall result in a termination of the Company for federal, state and local income tax purposes on the Effective Date. The Company shall close its books and records on the Effective Date and, on or before the due date therefor, shall file final federal, state and local income tax returns for the Company as constituted immediately prior to the Transferor's sale of the Interest to the Transferee under this Agreement concerning the Company's fiscal period beginning January 1, 2007 and ending on such date. The Transferee shall cooperate with the Transferor in the filing of

all Company tax returns for the year ending on the Effective Date. The Transferor shall control the conduct of any proceedings in case of any audit, inquiry or examination likely to result in a determination with respect to any federal, state or local tax of any kind or payments to any Governmental Authority in lieu of taxes ("Taxes") for which the Transferor is reasonably likely to be liable with respect to the Transfer.

(b)    Neither the Company, the Managing Member nor the Transferee shall file or allow to be filed any tax return or any amendment to the Company's prior written return, declaration, report, claim for refund or information return (collectively, "Tax Returns") for any period ending on or before the Effective Date without the prior consent of the Transferor, which consent shall not be unreasonably withheld, delayed or conditioned. The Managing Member and the Transferee shall notify the Transferor promptly upon learning of any audit, inquiry or examination of the Company that could result in the Transferor's being liable for Taxes, and the provisions set forth in Section 5.4 of the Operating Agreement shall apply in the event of any contest, with the Transferee responsible for any costs required to be paid by the Company if not paid by the Company.

(c)    The Company shall make the election provided for in Section 754 of the Code if requested by the Transferee or its designee at any time on or after the Closing Date.

(d)    The Managing Member covenants that it will cause the Company to prepare and file all financial reports and tax returns for the Company in accordance with the requirements set forth and by the deadlines set forth in Section 9 of the Operating Agreement. The penalties set forth in said Section 9 for failure to comply shall apply notwithstanding the sale of the Interest.

(e)    This Section 5 shall survive Closing.

6.    Substitute Member.    The Transferor acknowledges its intention that the Transferee become a substitute member of the Company in the place of the Transferor. The Transferee hereby accepts and assumes all the obligations and liabilities of the Transferor with respect to, or arising from, the Transferor's ownership of the Interest.

7.    Withdrawal of the Transferor.    Pursuant to this Agreement, the Transferor does hereby withdraw from the Company as a Member of the Company effective as of the Effective Date upon receipt of the Note and a copy of this Agreement executed by all parties hereto, and effective upon such payment and delivery, the Transferor shall thereupon cease to have or exercise any rights, interest or powers as a Member in the Company.

8.    Further Assurances.    The parties hereto hereby agree to execute any such additional documents and instruments as may be necessary to effectuate and further evidence the transfers and assumptions intended to be made hereby.

9.    Representations, Warranties and Covenants.    The Transferor, the Transferee, the Company, the Managing Member and each Guarantor each hereby represents, warrants, and covenants to each other that:

# 4487946_v2

3

(a)     Neither the execution nor the delivery of this Agreement, the incurrence of the obligations herein set forth, the consummation of the transactions herein contemplated, nor the compliance with the terms of this Agreement conflicts or will conflict with, or results or will result in a breach of, any of the terms, conditions, or provisions of, or constitute a default under, any bond, note, or other evidence of indebtedness or any contract, indenture, mortgage, deed of trust, loan agreement, lease, or other agreement or instrument to which such party is a party or by which such party may be bound.

(b)     Such party has the right, power, legal capacity, and authority to execute and enter into this Agreement and to execute all other documents and perform all other acts as may be necessary in connection with the performance of this Agreement.

(c)     No approval or consent not heretofore obtained by such party is necessary in connection with the execution of this Agreement by such party or the performance of such party's obligations under this Agreement, and no other Person has any claim to the Purchase Price or Payment delivered to the Transferor.

(d)     Such party has received independent tax and legal advice from attorneys and/or accountants of its choice with respect to the advisability of executing this Agreement.

(e)     Such party has made such investigation of the facts pertaining to this Agreement, and all of the matters pertaining thereto, as it deems necessary.

(f)     Such party will not take any action that would interfere with the performance of this Agreement by any other party or that would adversely affect any of the rights provided for herein.

10.     (a)     <u>Release by the Managing Member, the Guarantors, the Transferee and the Company</u>. Each of the Managing Member, the Guarantors, the Transferee and the Company, for itself and for each and all of its past, present, and future predecessors, successors, assigns, affiliates, licensees, transferees, principals, servants, agents, partners, associates, officers, directors, employees, representatives, shareholders, attorneys, insurers, legal representatives, descendants, dependents, heirs, executors, administrators, and all other persons hereby and forever releases and discharges and agrees to indemnify and hold harmless the Transferor and each and all of its past, present, and future predecessors, successors, assigns, affiliates, licensees, transferees, principals, servants, agents, partners, associates, officers, directors, employees, representatives, shareholders, attorneys, insurers, legal representatives, descendants, dependents, heirs, executors, administrators, and all other persons from any and all claims, demands, liens, causes of action, suits, obligations, controversies, debts, costs, expenses (including attorneys' fees), damages, judgments, and orders of whatever kind or nature, in law, equity, or otherwise, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed, do presently exist, or may exist, relating to the Company or its activities, assets, or liabilities, or the transactions contemplated by this Agreement.

(b)    Release by the Transferor. The Transferor, for itself and for each and all of its past, present, and future predecessors, successors, assigns, affiliates, licensees, transferees, principals, servants, agents, partners, associates, officers, directors, employees, representatives, shareholders, attorneys, insurers, legal representatives, descendants, dependents, heirs, executors, administrators, and all other persons hereby and forever releases and discharges and agrees to indemnify and hold harmless the Company, the Transferee, the Guarantors and the Managing Member and each and all of their past, present, and future predecessors, successors, assigns, affiliates, licensees, transferees, principals, servants, agents, partners, associates, officers, directors, employees, representatives, shareholders, attorneys, insurers, legal representatives, descendants, dependents, heirs, executors, administrators, and all other persons from any and all claims, demands, liens, causes of action, suits, obligations, controversies, debts, costs, expenses (including attorneys' fees), damages, judgments, and orders of whatever kind or nature, in law, equity, or otherwise, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed, do presently exist, or may exist, relating to the Company or its activities, assets, or liabilities, or the transactions contemplated by this Agreement, except for liability under Sections 6.2C, 7.8B, and Section 7.12 of the Operating Agreement and under this Agreement, which obligations survive the execution of this Agreement.

(c)    Survival/Extension of Guarantees. The Guarantors hereby confirm their obligation under the Guaranty Agreement "to repay the Investor Member's paid-in Capital Contributions to the Company in the event the Completion Date does not occur by November 30, 2006 and the Investor Member elects to have its Interest repurchased pursuant to Section 7.4N of the Operating Agreement," and confirm that the Guaranty Agreement remains in effect with respect to that obligation. The Guarantors shall also indemnify the Transferor for any obligations owed the Transferor under this Agreement, including payment of the Note, if not satisfied by the other parties to this Agreement.

11.    Costs; Waiver of Conditions. The parties agree that any costs incurred by the Company with respect to the assignment hereunder shall be paid by the Transferee. The Managing Member hereby waives any requirements under Sections 11.2C and 13.1 of the Operating Agreement that any party furnish any legal opinions with respect to the assignment hereunder.

12.    Litigation. In the event that any party shall maintain or commence any action, proceeding, or motion against any other party to enforce this Agreement or any provision thereof, the prevailing party on the merits therein shall be entitled to recover its actual reasonable attorneys' fees and costs therein incurred. Each party agrees that if such party hereafter commences, joins in, or in any manner asserts against any other party any claims determined by a court of competent jurisdiction to have been released hereunder, then it will pay to the other party, in addition to any other damages caused to the other party thereby, all actual reasonable attorneys' fees and costs incurred in defending or otherwise responding to such suit or claim.

13.    Survival of Terms. All of the terms, representations, warranties, and other provisions of this Agreement shall survive and remain in effect after the execution and delivery of this Agreement.

14.    <u>Counterparts</u>.  This Agreement and Instrument of Transfer may be signed in counterparts, with fewer than all parties signing a counterpart, but separate counterparts with collectively the signatures of all parties shall constitute an original Instrument of Transfer.

15.    <u>Governing Law</u>.  This Agreement and the interpretation thereof shall be governed by the laws of the state of California.


[Signatures appear on the next page.]

IN WITNESS WHEREOF, the undersigned have executed this Agreement and Instrument of Transfer, effective as of the day and year first above written.

TRANSFEROR:

CHEVRON TCI, INC.

By: _____

Name:   Richard Sheehy
Title:    Vice President

TRANSFEREE AND MANAGING MEMBER:

CARBONE PROPERTIES MANAGER, LLC

By: _____

Name:
Title:

COMPANY:

CARBONE PROPERTIES OPERATING
COMPANY, LLC

By:    CARBONE PROPERTIES MANAGER,
LLC, its Managing Member

By: _____

Name:
Title:

IN WITNESS WHEREOF, the undersigned have executed this Agreement and Instrument of Transfer, effective as of the day and year first above written.

TRANSFEROR:

CHEVRON TCI, INC.

By: _____

      Name:  Richard Sheehy
      Title:  Vice President

TRANSFEREE AND MANAGING MEMBER:

CARBONE PROPERTIES MANAGER, LLC

By: _____

      Name:  Ross P. Carbone
      Title:  Managing Member

COMPANY:

CARBONE PROPERTIES OPERATING COMPANY, LLC

By:  CARBONE PROPERTIES MANAGER, LLC, its Managing Member

By: _____

      Name:  Ross P. Carbone
      Title:  Managing Member

# 4487946_v2

7

GUARANTORS:

_____
Ross P. Carbone, individually

R. P. CARBONE COMPANY, an Ohio corporation

By: _____
        Name:   Ross P. Carbone
        Title:   Chief Executive Officer

<u>Exhibit A</u>

<u>PROMISSORY NOTE</u>

# 4487946_v2

9