**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHEVRON TCI, INC.,

        Plaintiff,

      v.

CARBONE PROPERTIES MANAGER,
LLC, ET AL.,

        Defendants.
_____/

No. C-08-0782 (JCS)

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT
[Docket No. 59]**

## I.     INTRODUCTION

Plaintiff Chevron TCI, Inc. ("Chevron") brings a Motion for Default Judgment against Defendants Carbone Properties Manager and Ross P. Carbone ("the Motion") in this diversity action for breach of contract.[1]  Defendants answered the Complaint, but then failed to appear at subsequent hearings.  The clerk entered default as to both Defendants.  A hearing on the Motion was held on April 3, 2009.  For the reasons stated below, the Court GRANTS Plaintiff's Motion.

## II.    BACKGROUND

### A.     Facts

Plaintiff Chevron is a California corporation with its principal place of business in San Francisco.  Complaint for Breach of Contract and Promissory Note ("Complaint") ¶ 1.  On or about December 30, 2004, Chevron and Defendant Carbone Properties Manager, LLC ("CPM"), an Ohio limited liability company, entered into the Operating Agreement of Carbone Properties Operating Company, LLC ("the Operating Agreement").  Complaint ¶ 9.  Carbone Properties Operating

---

[1] The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

Company ("the Company") was formed to lease an historic building in New Orleans, Louisiana, and to operate the building as a hotel after the building's owner, Carbone Properties of Audubon, rehabilitated it. Complaint ¶ 10.

Chevron was the Investor Member and CPM was the Managing Member of the Company. Complaint ¶ 11. Chevron invested $1,961,349.00 in the form of capital contributions. Complaint ¶ 14. Under the terms of the Operating Agreement, Chevron had the right to have its interest in the Company repurchased by CPM if the renovation project was not completed by November 30, 2006. Complaint ¶ 15. Defendant Ross P. Carbone ("Carbone") controlled CPM and personally guaranteed CPM's obligations under the Operating Agreement. Complaint ¶ 12. R. P. Carbone Company ("RPC"), a separate corporation controlled by Carbone, also guaranteed CPM's obligations.[2] Complaint ¶ 12.

When the Company failed to complete the project on time, Chevron notified Defendants in writing that it was exercising its right to have its interest repurchased with an effective repurchase date of February 5, 2007, and a repurchase amount of $2,311,470.00. Complaint ¶ 17. CPM did not make the required payment at that time. Complaint ¶ 18. Chevron and CPM then negotiated terms for the repurchase of Chevron's interest. Complaint ¶ 20. On April 30, 2007, Chevron and CPM concluded negotiations and entered the Agreement and Instrument of Transfer ("the Agreement"). Complaint ¶ 21; *see also* Complaint Exh. B. The terms of the Agreement obligated CPM to pay Chevron $2,367,710.00 plus compound interest at an annual rate of twelve percent until June 26, 2007 ("the Obligation") and, if the Obligation was not satisfied by that date, at an annual rate of fifteen percent thereafter. Complaint ¶ 22; Exh. B, ¶. 1-2. In exchange for these promises to pay, Chevron transferred its rights and interests in the Company to CPM. Complaint ¶ 25; Complaint Exh. B, p. 1. Chevron alleges that it has performed all of its obligations under the Agreement. Complaint ¶ 36.

The Obligation was also memorialized in the Promissory Note. Complaint ¶ 23; Complaint

---

[2] Because RPC has declared bankruptcy, the Court stayed proceedings as to RPC, a Defendant named in the Complaint. The Motion seeks default judgment only as to the remaining Defendants, CPM and Carbone.

United States District Court
For the Northern District of California

Exh. A.  The Promissory Note provided that if any payment due under the Obligation was late by five days or more, Chevron was entitled to a "late charge" of five percent of the overdue payment. Complaint ¶ 32; Complaint Exh. A at 11.  Chevron alleges that it has performed all of its obligations under the Promissory Note.  Complaint ¶ 29.  Carbone personally guaranteed CPM's obligations under the Agreement and Promissory Note.  Complaint ¶ 24; *see also* Sheehy Declaration Filed in Support of the Motion ("Sheehy Decl."), Exhs. G, E.  Pursuant to the Agreement and Promissory note, the Obligation came due on June 26, 2007.  Complaint ¶ 26. No payment was made at that time, but CPM made a payment of $200,000.00 on July 2, 2007.  Complaint ¶¶ 26-27.

**B.     Procedural History**

Chevron filed the Complaint on February 1, 2008, seeking damages for breach of the Agreement and breach of the Promissory Note against Defendant CPM.  Complaint ¶¶ 30, 37.  The Complaint also alleged breach of guaranty by Carbone and RPC.  Complaint ¶ 43.  Chevron sought the following relief: (1) compensatory damages according to proof, but not less than the principal, interest, and charges owed under the Promissory Note and Agreement; (2) incidental and consequential damages according to proof; (3) attorney's fees to which Chevron was entitled under the terms of the Agreement and Promissory Note; (4) costs; and (5) such other relief as the Court deems just.  Complaint at 6-7.  Defendants were served with a Summons and a copy of the Complaint on February 14, 2008.  *See* Docket No. 9, 11.  On February 22, 2008, Chevron stipulated to a two-week extension of time for Defendants to file a responsive pleading.  Defendants filed a joint Answer to the Complaint on March 10, 2008.  Docket No. 22.

The parties attended mediation, but failed to reach a settlement.  On September 15, 2008, Chevron filed a Motion for Summary Judgment against Defendants CPM and Carbone.  Docket No. 42. Subsequently, Defendants' attorneys each filed a Motion to Withdraw based on Defendants' failure to pay the agreed-upon legal fees.  *See* Docket No. 46, 49.  The Court held a hearing on the Motions on October 10, 2008.  *See* Docket No. 50.  The Court denied Chevron's Summary Judgment Motion without prejudice.  At the same hearing, the Court granted the attorneys' Motions to Withdraw, and ordered CPM and RPC ("the Entity Defendants")  to appear with counsel at the next case management conference, and ordered Carbone to appear either with counsel or in *pro per*.

**United States District Court**
For the Northern District of California

3

United States District Court

For the Northern District of California

1    Docket No. 50.  *Id.*  The Court cautioned Defendants that failure to appear would result in entry of

2    default against them.  *Id.*  On October 14, 2008, the Court issued an Order to Show Cause, notifying

3    Defendants of their obligation to appear at the Case Management Conference to be held on

4    November 14, 2008, and ordering Defendants to either appear, or show cause why default should not

5    be entered against them for failure to appear and defend.  Docket No. 51.

6        Defendants failed to appear at the November 14 Case Management Conference and Order to

7    Show Cause Hearing.  Because the corporate Defendant, RPC, had filed for bankruptcy, the Court

8    stayed proceedings as to RPC.  *See* Docket No. 53.  The Court ordered the entry of default as to

9    CPM, which had not obtained counsel or made an appearance, and ordered Chevron to file a motion

10   for default judgment as to CPM.  A further Case Management Conference and Order to Show Cause

11   Hearing was scheduled from December 5, 2008.  The Court stated that if Carbone failed to appear

12   and defend the action, Chevron could also file a motion for default judgment as to Carbone.  *Id.*

13   Default was entered against Defendant CPM pursuant to Federal Rule of Civil Procedure 55(a) on

14   November 17, 2008.  Docket No. 54.

15       Carbone failed to appear at the December 5 Case Management Conference and Order to Show

16   Cause Hearing.  The clerk of the court entered default against Cabrone on December 8, 2008.

17   Chevron filed the Motion that is currently before the Court on January 9, 2009.  Defendants were

18   served with the Motion and supporting declarations by overnight delivery on January 9, 2009.  *See*

19   Declaration of Elizabeth Burkhard Filed in Support of the Motion ("Burkhard Decl."), Exh. D ¶ 8.

20   The Motion seeks default judgment as to all causes of action in the Complaint.  Motion at 7.  Chevron

21   asserts that it has accrued damages in the amount of $2,947,736, which represents the principal,

22   interest and charges owing under the Agreement, and the costs incurred to enforce the Agreement,

23   including attorneys' fees.  Chevron alleges that it is entitled to attorneys' fees and costs in the amount

24   of $60,000.00.  Declaration of Richard Sheehy Filed in Support of the Motion ("Sheehy Decl."), Exh.

25   H.  Chevron does not provide a breakdown of these fees and costs or evidence as to how the

26   attorneys' fees were calculated.  *See id.*

27       A hearing was held on the Motion on April 3, 2009.  At the hearing, Chevron waived its claim

28   for attorneys' fees as well as its claim for the 5% "late fee," which Chevron had calculated as 5% of

the total amount of principal and interest outstanding on December 31, 2008, or $137,511.00.
Chevron requested additional pre-judgment interest that had accrued under the Agreement and
Promissory Note from the time the Motion had been filed until the April 3 hearing.

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction

As a preliminary matter, the Court addresses the question of subject matter jurisdiction.  In its
Complaint, Chevron alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Chevron alleges in
the Complaint that the requirements of diversity jurisdiction are met.  Chevron is a California
corporation with its principal place of business in San Francisco, California.  Defendant CPM is a
Louisiana limited liability company with its principal place of business in Cleveland, Ohio.
Defendant Ross P. Carbone is an individual who resides in Ohio.  Chevron also alleges and provides
evidence that the amount in controversy exceeds $75,000.00.  Accordingly, the Court concludes that
it has diversity jurisdiction over this case.

### B.   Standard For Awarding Default Judgment

Chevron has applied for a default judgment under Federal Rule of Civil Procedure 55(b) on
the basis that Defendants have failed to defend and have failed to appear through counsel.  Motion at
2.  Even where a defendant has filed an answer or otherwise appeared, default may be entered as a
sanction where the defendant subsequently fails to defend.  *See Ringgold Corp. v. Worrall*, 880 F.2d
1138, 1141 (9th Cir. 1989) (holding that where plaintiff did not attend pretrial conference or first day
of trial, district court did not abuse its discretion in entering default against plaintiff as to defendant's
counterclaim); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) (court did not
abuse discretion under Rule 55 in entering default for failure to defend where defendant failed to
comply with order to obtain substitute counsel, failed to file a pretrial memorandum and failed to
comply with discovery requests).  "[A] trial judge, responsible for the orderly and expeditious
conduct of litigation, must have broad latitude to impose the sanction of default" for failure to defend.
*Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986).

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against
a party who is not a minor, incompetent, or in military service where the clerk, under Rule 55(a), has

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

already entered the party's default based upon failure to plead or otherwise defend the action. A plaintiff is not entitled to entry of default as a matter of right; a court has discretion to enter a default judgment. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956). A district court may consider the following factors in exercising its discretion to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claim, facts not relating to damages alleged in the complaint generally are deemed to be true by virtue of the defendant's default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). A defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co., LTD. v. Houston Nat'l Bank*, 515 F. 2d. 1200, 1206 (5th Cir. 1975) (holding that allegations concerning existence and terms of a contract did not support liability where allegations were contradicted by actual contract). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default. *Id*.

Here, the clerk has entered default under Rule 55(a) as to both Defendants. Additionally, Chevron has alleged that Defendants are not minors, incompetent persons, or in military service. Motion ¶ 17; Burkhard Decl. ¶ 6. Because Defendants have appeared in this action, they are entitled to notice of the Motion at least three days prior to the hearing on the Motion. Fed. R. Civ. P. 55(b)(2). Defendants were served with written notice on January 9, 2009. Accordingly, because the requirements of Rule 55 have been met, the Court examines whether entry of default judgment is warranted under the *Eitel* factors.

### C.   *Eitel* Factors

#### 1.   Prejudice to Plaintiff

With regard to the first factor, the Court concludes that Chevron will be prejudiced if default judgment is not entered against Defendants. Without entry of default judgment, Chevron would be

1    denied the right to judicial resolution of its claims and likely would be without other recourse for

2    recovery.  *See Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal.

3    2003).

**2.      Sufficiency of Plaintiff's Complaint and Substantive Merits**

**a.      Breach of contract by CPM**

6         In California, the elements required to prove a breach of contract claim are: (1) existence of a

7    contract; (2) plaintiff's performance; (3) defendants's breach; and (4) resulting damages to the

8    plaintiff.  *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).  Chevron has alleged that

9    CPM was contractually obligated to repurchase Chevron's interest in the Company, that Chevron

10   fully performed its obligations under the contract, that CPM failed to pay the principal and interest

11   due under the contract, and that as a result, Chevron suffered damages.  Chevron's allegations are

12   sufficient to state a claim for breach of contract.  *See Reichert*, 68 Cal. 2d at 830.

**b.      Breach of guaranty**

14        "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of

15   another, or hypothecates property as security therefor."  Cal. Civ. Code § 2787.  A guarantor makes a

16   direct promise to perform the principal's obligation in the event the principal fails to perform.  Thus,

17   "the obligation of a guarantor as a surety is identical to that of the principal debtor."  *Brunswick*

18   *Corp. v. Hays*, 16 Cal App 3d 134, 137 (1971).  Because CPM has failed to perform its obligations

19   under the Agreement and the Promissory Note, Carbone shares liability for the entire amount of the

20   Obligation owed by CPM.  *See id.*; Complaint, Exh. B ¶ 10(c) (guaranty provision in Agreement).

21    These allegations, taken as true on Defendants' default, are sufficient to establish liability and this

22   factor weighs in favor of entering default judgment.

**3.      Excusable Neglect**

24        There is no evidence that Defendants' failure to appear in this action was due to excusable

25   neglect.  Defendants appeared in Court on October 10, 2008, and were informed that failure to defend

26   this action would result in entry of default.  Defendants' counsel were present at that hearing.  CPM

27   was advised of its obligation to appear though counsel, and Carbone was advised that he could appear

28   in *pro per*.  Defendants did not appear at either subsequent case management conference on

**United States District Court**
For the Northern District of California

1    November 14 and December 5, 2008.  Nor have Defendants filed an opposition or any other response

2    to the present Motion.  Therefore, this factor weighs in favor of granting the Motion.

3         **D.    Damages**

4         In order to obtain the entry of a default judgment, a plaintiff must prove the amount of

5    damages to which it is entitled.  *See Geddes*, 559 F.2d at 560 (9th Cir. 1977).  Here, the Agreement

6    specifies that California law shall apply to the interpretation of the Agreement.  In determining the

7    controlling substantive law, a federal court sitting in diversity must look to the forum state's choice of

8    law rules.  *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Electric*

9    *Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).  Under California law, a

10   choice of law provision will be enforced when: (1) the chosen state has a substantial relationship to

11   the parties or their transaction, or there is any other reasonable basis for the parties' choice of law;

12   and (2) the chosen state's law is not contrary to a fundamental policy of California.  *Nedlloyd Lines*

13   *B.V. v. Superior Court of San Mateo*, 3 Cal. 4th 459, 464-66 (1992); *Windsor Mills, Inc. v. Collins &*

14   *Aikman Corp*., 25 Cal. App. 3d 987, 995-96 n. 6 (1972) (parties may expressly agree what law shall

15   govern their contract).  The Court concludes that it is reasonable to apply California law in this

16   instance because Chevron is a California corporation and the parties agreed to apply California law.

17   *See Windsor Mills*, 25 Cal. App. 3d at 995-96. n.6.

18        In California, the appropriate amount of damages for breach of contract "is the amount which

19   will compensate the party aggrieved for all the detriment proximately caused thereby . . . ."  Cal. Civ.

20   Code § 3300.  "The detriment caused by the breach of an obligation to pay money only, is deemed to

21   be the amount due by the terms of the obligation, with interest thereon."  Cal. Civ. Code § 3302.

22   After reviewing the Complaint and papers submitted in support of Plaintiffs motion, the Court finds

23   that Chevron has presented sufficient evidence to establish that it is entitled to recover damages in the

24   amount of the principal and interest owed.

25              **1.    Principal Amount**

26        Chevron has alleged and provided evidence to show that the principal amount due at the time

27   Defendants entered the Agreement and Promissory Note on April 20, 2007 was $2,367,710.00.  *See*

28   Motion ¶ 7; Complaint Exhs. A-B.  On July 2, 2007, CPM made a payment of $200,000.00.  Chevron

applied $55,785.00 to the accrued interest and the remaining $144,215.00 to the principal amount, in accordance with the terms of the Promissory Note.  *See* Complaint Exh. A at p. 11; Sheehy Decl. Exh. H.  This left a principal balance of $2,223,495.00.  The Court finds sufficient evidence of damages in the amount of the unpaid principal amount of $2,223,495.00.

### 2.   Pre-Judgment Interest

Chevron has submitted copies of the Agreement and Promissory Note that specify the amount of interest and the relevant dates.  Interest was to be compounded annually, at a rate of twelve percent from the date of the Agreement, April 20, 2007, until the principal amount came due on July 2, 2007.  Thereafter, interest was to be compounded annually at a rate of fifteen percent.

Under California law, "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation."  Cal. Civ. Code § 3289(a).  The only question is whether the interest rates specified by the Agreement and Promissory Note are "legal rate[s]."  The usury law in California is based on the California Constitution, which limits the amount of interest that may be charged on any loan or forbearance of money.  Cal. Const. art. XV, § 1 (limiting interest rates on a loan or forbearance to the higher of either ten percent, or five percent above the interbank rate charged by the Federal Reserve Bank of San Francisco).

The rates in the instant matter exceed both measures specified in the California Constitution.  However, the constitutional  limitation is subject to many exceptions, and the Court is satisfied that this case presents an exception.  *See Southwest Concrete Prods. v. Gosh Constr. Corp.*, 51 Cal. 3d 701, 70-05 (1990) (holding that interest payments on overdue commercial accounts are not subject to usury laws and affirming damages based on eighteen percent annual interest rate).  A crucial distinction is whether the transaction is a "loan or forbearance," or a transfer of goods or property.  A loan of money is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount.  A forbearance of money is the giving of further time for the payment of a debt or an agreement not to enforce a claim at its due date.  *Boerner v. Colwell Co.*, 21 Cal.3d 37, 44, n.7 (1978).  "Both a loan of money and a forbearance are to be distinguished from a sale which is the 'transfer of property in a thing for a price in money.'"  *O'Connor* v. *Televideo System, Inc.*, 218 Cal.

United States District Court

For the Northern District of California

App.3d 709, 713 (1990).  In addition, "a debtor by voluntary act cannot render an otherwise valid transaction usurious."  *Southwest Concrete*, 51 Cal. 3d at 706.  "[A] debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract."  *Id.*  (quoting *Sharp v. Mortgage Sec. Co.*, 215 Cal. 287, 291 (1933)) (internal quotations omitted).

The Agreement between Chevron and Defendants was a transfer of interest in the Company and was therefore not a loan or forbearance triggering California's usury laws.  *See id.* at 705; Complaint Exh. B, at p. 1.  In addition, the escalating interest rate provisions of the Agreement and Promissory Note were triggered by CPM's failure to pay the amount due, and was therefore triggered by a contingency which was under the control of the debtor.  *See Southwest Concrete*, 51 Cal. 3d at 706.  The Court therefore concludes that the interest rate was a legal rate of interest.

The Court calculates the interest from July 2, 2007, the time of CPM's $200,000 payment, which was applied to all of the interest that had accrued on the obligation until that point.  From July 2, 2007 to April 20, 2008, interest accrued for 292 days at a daily rate of $914 (15% divided by 365 days times the principal amount of $2,223,495) for an interest amount of $266,888.00. This amount is added to the unpaid principal of $2,223,495.00 for the purposes of calculating compound interest. Then, from April 20, 2008 until April 3, 2009, interest accrued at a daily rate of $1,023 (15% divided by 365 days times the outstanding principal amount of $2,490,383.00) for 348 days,[3] amounting to $356,004.00.  Thus, the total interest on the original principal amount is $622,892.00.  Chevron is entitled to this amount as damages under the Agreement and Promissory Note.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS default judgment against Defendants CPM and Carbone on all causes of action in the Complaint.  Damages are awarded as follows:

1. The unpaid principal due under the Agreement and Promissory Note
   in the amount of $2,223,495.00

2. Pre-judgment interest accrued on the principal in the amount of $622,892.00.

---

[3] The number of days (348) represents the elapsed time from April 20, 2008 to April 3, 2009, the date of the hearing on the Motion.

Accordingly, the total amount of damages, consisting of principal and interest accrued between July 2, 2007 and April 3, 2009,  is $2,844,387.00.

IT IS SO ORDERED.

Dated: April 3, 2009

_____
JOSEPH C. SPERO
United States Magistrate Judge

.

**United States District Court**
For the Northern District of California